JOSEPH GRAYDON, complainant, *vs.* ROBERT CHURCH and ENNIS CHURCH *et al.*, defendants.

F., a resident of New York, and the obligee and holder of a bond and accompanying mortgage on land in Michigan, assigned them conditionally to C., as security for a debt due and future advances, and to be reassigned on payment of the debt. After breach of condition of assignment, C., with F.'s consent, assigned the securities in like manner to I. B., who, after condition broken of assignment to him, sold the securties to J. By the latter they were sold to G. B., who procured a conveyance of the mortgaged premises from mortgagor and wife, and canceled the bond. F., the obligee and mortgagee, after he assigned to C., and before C. assigned to I. B., becoming insolvent, was prosecuted by creditors' bill in New York; and, by order of the Court of Chancery, assigned all his estate to a Receiver, and the assignment was duly recorded in the county where the mortgaged premises were; but of this, I. B., the second assignee, was ignorant until after he acquired the securities, when he applied to the Receiver to redeem them by paying the debt, for security of which he held; but the Receiver declined. After said conveyance by the mortgagor and wife to said last assignee, and the cancelation of the bond, the defendants, R. and E. C., became purchasers of the last assignee's title, in good faith and ignorant of the assignment by F. to the Receiver; and, on bill filed by the latter, to redeem the bond and mortgage. *Held,*

First. That said Receiver, by the assignment of F., under the order of the Court of Chancery of New York, took an interest in the said bond and mortgage.

Second. That the conveyance from the mortgagor and wife to the last assignee of said bond and mortgage, operated as a merger of said mortgage, so as to make the title in said last assignee complete.

Third. That the mortgage in the hands of said last assignee was not subject to any claim of said Receiver.

Fourth. That the mortgaged premises in the hands of said last assignee, was not subject to any claim of said Receiver.

Fifth. That the defendants, R. and E. C., holding said premises under said last assignee, did not hold the same subject to any prior equity of said Receiver.

Case reserved from the Circuit Court for the County of Calhoun, in Chancery.

The bill of complaint in this case, was filed by complainant, against Robert and Ennis Church, and several other defendants.

Joseph Graydon, complainant, *vs.* Robert and Ennis Church *et al.*, defendants.

The complainant claimed a right to certain land set forth in the bill, and a right to have the same by way of redemption, upon payment of a sum of money to the defendants above mentioned, whom he asserted held a mere mortgage interest, and filed this bill to enforce this claim.

The defendants, R. & E. Church, held the title in fee, through a foreclosure of a mortgage given by one Bolles to W. McCamus ; complainant did not claim this mortgage to remain open, but asserted that Bolles himself had a mere mortgage interest, and it was *this* which complainant claimed the right to redeem. Said defendants, R. and E. Church, only appeared and defended.

The history of the case was this : George Ketchum, owning the fee of the land, gave a bond and mortgage to George Fetterman, in May, 1836 : March 12, 1838, George Fetterman assigned this bond and mortgage to Robert G. Cruttenden, in the usual form, but with a proviso that if he should pay Cruttenden a sum due to him, and such further advances as Cruttenden might make, then the assignment should be void ; and Cruttenden, if he had received the amount of it, should account accordingly. After breach of this condition, and with Fetterman's assent, Cruttenden assigned and delivered the bond and mortgage to Isaac W. Bishop in the same manner, to secure a note on which Fetterman was liable with Cruttenden. Bishop, after condition broken, sold the securities to one Jones, who sold them to Bolles. Bolles took from Ketchum a deed of the land and cancelled the bond. Afterwards he made the mortgage on the land above referred to, to W. McCamus, who foreclosed it, and the defendants R. and E. Church purchased on the foreclosure, and therefore held through Bolles' title.

Graydon, after Cruttenden's claim had become absolute, and before Bishop purchased, was made Receiver of Fetterman in a creditor's bill in New York, and Fetterman assigned to him under the statute, and pursuant to an order of the

Court of Chancery of that State. Of this, Bishop had no knowledge when he purchased. Having afterwards learned of it, Bishop, desiring to dispose of the securities, applied to Graydon to have him redeem by paying him the amount of his debt, but Graydon declined—refused to undertake it, because he did not believe anything could be realized, and authorized Bishop to dispose of them in his discretion.

The case came on to be argued at the December term, 1856, of said Court, and after argument, the following questions were reserved by the Circuit Judge, for the opinion of this Court :

1. Whether the Receiver of Fetterman, by the assignment to him under the statute of New York, took any interest in the said bond and mortgage from Ketchum and wife to Fetterman.

2. Whether a Receiver appointed in the State of New York, can, as such Receiver, institute a suit in this Court.

3. Whether the conveyance from Ketchum to Bolles operated as a merger of said mortgage, which he then held, so as to make the title in him complete.

4. Whether said mortgage in the hands of Bolles, was subject to any claim of the complainant.

5. Whether the land in the hands of Bolles, was subject to any claim of the complainant.

6. Whether the parties holding the land under Bolles, held the same subject to any prior equity of the complainant.

*Hovey K. Clarke*, for complainant.

Comity, to sister States, requires that Receivers, appointed in such States, should be allowed to collect their effects, wherever they may find them. (*Story Confl. Laws, p.* 409 *to* 420; *Holmes* vs. *Remsen*, 4 *J. C. R.*, 460; *Bank of Augusta* vs. *Earle*, 3 *Pet.*, 588; *Hoyt* vs. *Thompson*, 3 *Seld.*, 320.)

The Court of Chancery, though unable to bind by decree property beyond its jurisdiction, may, nevertheless, compel

parties within its jurisdiction to execute such deeds as will pass the title to such property. (4 *Bouvier Inst.*, 250; 2 *Spenc. Eq. Juris.*, 6, 7; *Mitchell* vs. *Bunch*, 2 *Paige*, 606; *Boothe* vs. *Clark*, 17 *How.*, 332, 335, 339; *Thomas* vs. *Merchants' Bank*, 9 *Paige*, 216.)

But the property was not beyond the jurisdiction of the Court of Chancery of New York. At the time of the assignment by Fetterman, the bond was in his possession at Albany.

The assignment of a mortgage of real estate as a security, is a mortgage of the mortgage, and it confers upon the assignee all the powers, and charges him with all the obligations of a mortgage of real estate. (*Slee* vs. *Manhattan Co.*, 1 *Paige*, 48; *Clark* vs. *Henry*, 7 *J. C. R.*, 40; *S. C.*, 2 *Cow.*, 324; *Wilson* vs. *Troup*, *Ib.*, 236; *Norton* vs. *Warner*, 3 *Ewd.*, 106; *Sweet* vs. *Van Wyck*, 3 *Barb.*, *Ch.* 647; *Gurney* vs. *Seppings*, 22 *Eng. Ch. R.*, 39; *Cutts* vs. *York*, 6 *Shep.*, 191.)

If the relation of mortgagor and mortgagee once subsisted between Fetterman and Cruttenden, then an equity of redemption will continue to exist in Fetterman and his representatives, until released by deed or barred by foreclosure. (1 *Hill on Morts.*, 244; *Story Eq. Jur.*, § 1023; 1 *Pow. on Mort.*, 119, 122; *Ib.*, 360, 363; *Hart* vs. *Ten Eyck*, 2 *J. C. R.*, 101; *Wilson* vs. *Troup*, 2 *Cow.*, 231.) Loose declarations of the mortgagee, that he does not care for the property, will not bar the equity of redemption. (*White* vs. *Phelps*, 12 *N. H.*, 382; *Tuft* vs. *Hays*, 5 *Ib.*, 452; *Rees* vs. *Chase*, 9 *Ib.*, 178.)

The assignee may collect, or he may foreclose the mortgage ; but all he receives over and above his own debts, he holds as trustee for the original mortgagee, who bears to him the relation of mortgagor. (*Story Eq. Juris.*, § 1016; 1 *Pow. on Mort.*, p. 109 *and notes*; *Willis on Trustees*, p. 68, 10 *Law Lib.*)

82

If by foreclosure, or by any mode which operates as a discharge of the mortgage, the assignee takes the title to the land, he will hold it as trustee, and will be decreed to convey it to the original mortgagee, on payment of the debt which it was first assigned to secure. (*Story Eq. Juris.*, §§ 976, 1258, 1260; 1 *Pow. on Mort.*, *p.* 109; 2 *Lead Eq. Ca.*, *pp.* 97, 98.)

*D. D. Hughes*, with whom was *J. Van Arman* and *J. V. Campbell*, for the defendants, R. and E. Church.

The title of the defendants Church is a perfect record title to the land, and cannot be touched by the complainant's equities, if he had them.

When they bought, they took a title which had become in Bolles a perfect legal title. In that title, the equity of redemption, which was conveyed to Bolles by Ketchum, Graydon confessedly had no interest. His interest, if any (and even then we submit he had none), was a secret interest in the securities then owned by Bolles. He had an interest in the bond, but not in the land. When Bolles, holding the mortgage, purchased the equity of redemption, the effect of that purchase was to invest him with the full and unencumbered legal title to the land. Any one buying from him could only be required to look thus far. The registry laws are made for the express purpose of saving purchasers from outstanding claims to which they have nothing to call their attention. Graydon's claim nowhere appeared. Bolles, having the bond through a series of assignments, had the right to receive all the money upon it, or to convert it. If any one had the right to any share of the funds, it was but as *cestui que trust* of him as trustee. He might be liable to account, but no one dealing with him could be compelled to see that he appropriated the money rightly. It cannot be doubted, that even if the title had been in him expressly as trustee under such papers as he had, it would be with full

power to convey. The doctrine that the union of the legal and equitable estates produces a merger, is subject to no exception, except the interest of the mortgagee. If he desires to permit a merger, and there are good and proper reasons for keeping the estates separate, then they may be ; as, for instance, where there is a subsequent mortgage which, by the merger, would become prior to his right, he has a right to set up his mortgage as a separate thing. But this is only an apparent exception, because he does not get the *whole* title, if there be such a mortgage. (*Forbes* vs. *Moffat*, 18 *Ves.*, 384, 389.)

The exceptions are all made for the benefit of the mortgagee ; and if he consents, there can be no doubt of the merger. (4 *Kent's Com.*, 102, 103; *Walker* vs. *Baxter*, 26 *Vt.*, 760; *Gardner* vs. *Astor*, 3 *J. C. R.*, 55; *James* vs. *Johnson & Morey*, 6 *J. C. R.*, 417; *Gibson* vs. *Crehore*, 2 *Cow.*, 246; *Jerome* vs. *Seymour*, *Harr. Ch. R.*, 357; *Mills* vs. *Comstock*, 5 *J. C. R.*, 214; *Starr* vs. *Ellis*, 6 *J. C. R.*, 393; *Freeman* vs. *Paul*, 3 *Greenl.*, 260; *Campbell* vs. *Knights*, 11 *Shep.*, 332.)

In this case, there can be no doubt of the intention of the parties ; for when he took the conveyance of the equity of redemption from Ketchum, Bolles cancelled the bond, which operated as a discharge of the mortgage, upon the principle that the bond *is* the mortgage to all intents and purposes—the security upon the land constituting a mere incident to the debt. (*Lessee of Jennings* vs. *Wood*, 20 *Ohio R.*, 261.)

McCamus, then, in taking a mortgage from Bolles, took a security which was strictly legal in all respects. He found the record clear, and unless actually notified that Graydon had an interest in the land, could not have been held liable in any sense. But neither Bishop, Jones nor Bolles could be held subject to the Graydon claim. An assignee takes subject not to equities attaching between his assignor and other parties, but equities attaching against the instrument

itself. (*Cicotte* vs. *Gagnier*, 3 *Mich. R.* 131; *James* vs. *Morey*, 2 *Cow.*, 247).

And one who deals with a mortgagee in whom the estate has become absolute, is not to be affected by any such claims. (*Mills* vs. *Comstock*, 5 *J. C. R.*, 214; *and above cases*).

The case of Slee *vs.* The Manhattan Company (1 *Paige R.*, 324), is the only case to be found in which the right of redemption has been held to attach under any circumstances, to *land* purchased in by a partial assignee of a mortgage. But that case decides no such absolute doctrine. There had been no intermediate assignments. The Corporation that purchased the land had but a partial interest in the security, and expressly agreed to pay Slee any surplus that might arise upon a sale of the land. That case is analogous to the ordinary one of a trustee purchasing in the trust estate upon a mortgage. He may be held liable in an action for money had and received; because, having destroyed the security, it is all one as if he had collected it. Or, when a special trust exists, the *cestui que trust* may elect to take the trust estate; in which case, however, the authorities are uniform that the election must be exercised speedily.

That case would have been more analogous to this, if there had been intermediate assignees, and if the Company had sold the property to an innocent purchaser, and Slee had then sought to reach the land in his hand. The case negatives completely any such right as this would have been. And here, too, Graydon has stood by and allowed years to pass while Bolles was acting and encumbering the property, without act of warning. It would be aiding him in a direct fraud to allow an intervention now, even if he had once had a right.

And not only so, but by his express declarations he has shown that he intended and expected to claim nothing, and expressly told Bishop to do what he thought best with the securities. See Bishop's testimony.

The authority of a Receiver is confined to the forum of his appointment. (*Booth* vs. *Clark*, 17 *How. R.*, 322.)

The difficulties suggested in that case, occur here with great force. He claims, by this bill, a right to the possession and control of real estate within this State. According to the theory of the complaint, the defendants are tenants of the New York Court of Chancery. Though the medium of an assignment, which, if ever so valid, conveyed no *legal* interest in any thing, he now claims the legal title to this real estate, and the rents and profits

The assignment to the Receiver contains no description of any bond or mortgage, and there was no delivery of them, and no notice by Graydon of any such assignment. The possession of the instruments, though not, perhaps, strictly essential to pass the title, is nevertheless so essential that the rights of innocent parties will always be protected under it. (*R. S. of* 1838, *p.* 331, § 6; *R. S. of* 1846, *p.* 327, § 7; *Stoddard* vs. *Butler*, 20 *Wend.*, 507; 1 *Powell on Mort.*, 23 *a.*)

The bond is the principal, and the mortgage is merely the incident. The bond is a mere chattel interest, and so is a mortgage. (*Wilson* vs. *Troup*, 2 *Cow.*, 195; *Dougherty* vs. *Randall*, 3 *Mich. R.*, 1; *Jackson* vs. *Willard*, 4 *J. R.*, 43; *Jackson* vs. *Blodget*, 5 *Cow.*, 202; *Johnson* vs. *Hart*, 3 *Johns. Ca.*, 322; *Southerin* vs. *Meldrum*, 5 *N. H.*, 420; *Glass* vs. *Ellison*, 9 *N. H.*, 69; *Smith* vs. *Moore*, 11 *N. H.*, 55; *Rigney* vs. *Lovejoy*, 13 *N. H.*, 247; *Whittemore* vs. *Gibbs*, 4 *Foster*, *N. H.*, 484.)

And upon failure to pay according to condition, the title vests absolutely. (*Ackley* vs. *Finch*, 7 *Cow.*, 90; *Tannahill* vs. *Tuttle*, 3 *Mich. R.*, 10; *Brown* vs. *Bement*, 8 *J. R.*, 96; *Langdon* vs. *Buel*, 9 *Wend. R.*, 80.)

There is no right to redeem a mortgage chattel when it has been disposed of, after forfeiture. The quality of being subject to redemption is the main thing which distinguishes

pledges from chattel mortgages. And in the case of the latter, the cases do not maintain any such general right.

Tucker *vs.* Wilson (1 *P. Wms.*, 261), which maintained such a redemption, was reversed in the House of Lords *nem con.* (1 *Bro. P. C.*, 494.)

In Lockwood *vs.* Ewer (2 *Atk. R.*, 303), the right was unconditionally denied as against the mortgagee himself.

In Thompson *vs.* Moore (36 *Maine R.*, 47), the right to receive a surplus upon sale was based upon a *waiver* of the forfeiture.

The questions reserved were decided orally, and the following order directed to be certified to the Court below.

"This cause having been argued by H. K. Clarke, Esq., of counsel for complainant, and Mr. Campbell and Mr. Van Arman, for defendant, and fully considered : it is ordered, that it be certified to the Circuit Court for the County of Calhoun, in Chancery, that the fourth, fifth, and sixth questions reserved, should be answered in the negative ; and that the first and third questions should be answered in the affirmative."

Present and concurring, PRATT, P. J., DOUGLASS, MARTIN, BACON, and WILLSON, J. J.

NOTE.—The answer to the other questions, disposing fully of the case, the second question reserved, was not considered.